FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUL 09 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JAMEL ETHRIDGE,

                Petitioner,

— against —

UNITED STATES OF AMERICA,

                Respondent.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**

08-CV-4868 (SLT)

**TOWNES, United States District Judge:**[1]

    Jamel Ethridge ("Petitioner"), proceeding *pro se*, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. Petitioner argues primarily that case law decided subsequent to his sentencing makes it clear that this Court miscalculated his sentencing range under the United States Sentencing Guidelines ("U.S.S.G") and that this Court should now re-sentence him without the two-point enhancement it included in accordance with U.S.S.G. § 4A1.1(d). The government contends that petitioner's writ is procedurally barred. For the reasons set forth below, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is dismissed as procedurally barred.

## BACKGROUND

    On September 30, 2005, Petitioner pled guilty before this Court to unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924 (a)(2). Under the terms of his plea agreement, Petitioner waived the right to appeal or otherwise challenge his sentence in the event that this Court imposed a sentence of 51 months or less.

---

[1] The Court gratefully acknowledges the assistance of a student intern, Lancelot Esteibar of Benjamin N. Cardozo School of Law, in the preparation of this Memorandum and Order.

The United States Probation Department, however, determined the sentencing range under the guidelines to be 57 to 71 months, based on a Base Offense Level of 21 and a Criminal History Category of IV. In calculating petitioner's Criminal History Category, the Probation Department included a two-point enhancement in accordance with U.S.S.G. § 4A1.1(d), in the belief that Petitioner was on supervised release at the time he committed the instant offense. Before recommending this two-point enhancement, the Probation Department verified with the Queens County Supreme Court Clerk's Office that Petitioner had been sentenced to a five-year determinate term of imprisonment for attempted murder on February 4, 2000, and had been released from custody on May 8, 2003. The Probation Department also contacted officials at the New York State Division of Parole, who stated that parole violation proceedings had been initiated against petitioner.

Nothing in the Presentence Investigation Report suggests that the Probation Department obtained the sentencing minutes or commitment order relating to petitioner's attempted murder conviction. However, at the time the Probation Department wrote the Presentence Investigation Report in this case in December 2005, there would have been no need to do so. Penal Law § 70.45 – enacted as part of Jenna's Law in 1998 – eliminated parole and mandated a period of five years' post-release supervision ("PRS") for most first-time felony offenders. Relying on that portion of Penal Law § 70.45(1) which expressly provided that "[e]ach determinate sentence also includes, as a part thereof, an additional period of post-release supervision," New York State courts were routinely holding that determinate sentences automatically included a term of PRS, notwithstanding the trial court's failure to mention PRS at the time of sentencing. *See, e.g., People v. Sparber*, 34 A.D.3d 265, 265-66 (N.Y. App. Div. 2006); *People v. Lingle*, 34 A.D.3d 287, 289 (N.Y. App. Div. 2006) (citing *People v. Crump*, 302 A.D.2d 901 (N.Y. App.

2

Div. 2003), *lv. denied*, 100 N.Y.2d 537 (2003)); *People v. Thweatt*, 300 A.D.2d 1100 (N.Y. App. Div. 2002); *People v. Bloom*, 269 A.D.2d 838 (N.Y. App. Div. 2000), *lv. denied*, 94 N.Y.2d 945 (2000)).

Although petitioner objected to other aspects of the Presentence Investigation Report, *see* Letter to Hon. Sandra L. Townes from Douglas G. Morris, Esq., dated Dec. 23, 2005, petitioner did not object to the two-point enhancement pursuant to U.S.S.G. §4A1.1(d). This Court concurred with the Probation Department's assessment of the guidelines range and, on February 17, 2006, sentenced petitioner to 68 months' imprisonment. Petitioner filed a notice of appeal shortly thereafter.

After petitioner filed his notice of appeal, but before petitioner filed his appellate brief, the Second Circuit expressly rejected the view that PRS was automatically included in a determinate sentence by operation of law, notwithstanding the trial court's failure to mention PRS at the time of sentencing. *Earley v. Murray*, 451 F.3d 71, 76 (2d Cir. 2006) ("The state contends that a five-year PRS was mandated by statute and therefore necessarily part of Earley's sentence by operation of law. We disagree."). In the context of a state habeas case, the *Earley* Court held that by administratively adding a five-year term of PRS to Earley's sentence, the New York State Department of Correctional Services ("DOCS") acted contrary to clearly established Federal law as determined by the United States Supreme Court in *Hill v. United States ex rel. Wampler*, 298 U.S. 460 (1936). Reading *Wampler* as holding that the judgment of a sentencing court "establishes a defendant's sentence, and that sentence may not be increased by an administrator's amendment," *Earley*, 451 F.3d at 75, the *Earley* Court found that clearly established Supreme Court precedent "render[ed] the five-year PRS term added to Earley's sentence by DOCS invalid." *Id.* at 76. The Second Circuit instructed the district court to

3

determine if the § 2254 petition was timely filed and, if so, "to issue a writ of habeas corpus excising the term of post-release supervision from Earley's sentence and relieving him of any subsequent penalty or other consequence of its imposition." *Id.* at 77.

A month and one-half after *Earley* was decided, petitioner filed his appellate brief. In that submission, petitioner argued that his sentence was unreasonable because it gave undue weight to his criminal history and ran afoul of the parsimony clause in 18 U.S.C. § 3553(a). *See United States v. Ethridge*, 249 F. App'x 249, 250 (2007). However, petitioner did not raise the ground upon which he relies in this § 2255 motion.

In April 2008, the New York Court of Appeals joined the Second Circuit in rejecting the view that PRS could be imposed in cases in which the sentencing judge had failed to expressly impose a term of PRS. *See People v. Sparber*, 10 N.Y.3d 457 (N.Y. 2008). In *Sparber*, the Court of Appeals held that New York Criminal Procedure Law §§ 380.20 and 380.40 collectively require that a defendant be present when a sentence of PRS is pronounced. *See id.* at 469. Accordingly, *Sparber* held that any sentence of PRS pronounced outside the presence of the defendant is a procedurally invalid sentence. *See id.* at 472.

Soon after *Sparber* was decided, the New York State Parole Division of Parole notified Justice James P. Griffin – the judge who had sentenced Petitioner upon his February 2000 conviction for attempted murder – that he might have neglected to sentence Petitioner to a term of PRS in accordance with Penal Law §70.45. Letter to Hon. James P. Griffin from New York Division of Parole, dated August 1, 2008 (attached to the Petition as Petitioner's Ex. 1). The Division of Parole did not have a copy of the sentencing minutes, but noted that the commitment form completed by the court clerk at the time of sentencing did not provide for a term of PRS. *Id.*

4

By the time the Division of Parole notified Justice Griffin, Petitioner had completed his original sentence on the attempted murder charge and was already incarcerated on the instant federal felon-in-possession charge. Accordingly, Justice Griffin re-sentenced Petitioner to time served. *See* Order of Hon. James P. Griffin dated Oct. 16, 2008 (attached to Petition as Petitioner's Ex. 2).

On November 24, 2008, after being notified of this change, Petitioner filed the instant motion pursuant to 28 U.S.C. § 2255. Petitioner principally argues that, in light of the change in New York law, this Court must now re-sentence him without the two-point enhancement detailed in U.S.S.G. § 4A1.1(d). This two-point reduction would downgrade Petitioner's Criminal History Category from IV to III and lower the advisory sentencing guideline range from 57 to 71 months to 46 to 57 months. Petitioner further argues that his motion should not be procedurally barred because he is "actually innocent" of the two-point enhancement. Petitioner argues that the "actual innocence" exception should be applied to a procedural error, such as the miscalculation of his sentence under the U.S.S.G.

In response, the government argues that Petitioner has neither alleged a fundamental error that warrants a § 2255 remedy nor established "actual innocence." First, the government relies on the general rule that only "fundamental" errors resulting in a "complete miscarriage of justice" are eligible for a § 2255 remedy. *United States v. Wright*, 524 F.2d 1100, 1101 (2d Cir. 1975). Second, the government contends that the "actual innocence" exception has traditionally only been applied in instances where an individual is proven to be innocent of a prior conviction, and not where the individual's sentence has been miscalculated.

## DISCUSSION

A Court can grant a motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 only if (1) the Petitioner's sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose the sentence; or (3) the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *United States v. Pitcher*, 559 F.3d 123, 123 (2d. Cir. 2009). "[A] collateral attack on a final judgment in a federal criminal case is generally available under § 2255 ... for... an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). Since "[d]ue process requires that a defendant ... 'not be sentenced based on materially false information,'... material[ly] false assumptions as to any relevant facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." *Darden v. Bureau of Prisons*, No. 09-CV-2451 (SJ), 2010 WL 1608115, at *3 (E.D.N.Y. Apr. 19, 2010) (internal citations omitted). Moreover, "[a]n error in sentencing procedure can cause a clear miscarriage of justice where a party's liberty is compromised." *Id.*

The calculation of Petitioner's criminal history category should not have included a two-point enhancement, as per U.S.S.G. § 4A1.1(d). That enhancement was based on the false assumption that Petitioner was on parole for the state conviction of attempted murder. In fact, because Queens County Supreme Court Justice Griffin appears not to have mentioned PRS in sentencing Petitioner upon his plea of guilty to attempted murder, Petitioner was never sentenced to PRS. *See United States v. Hightower*, No. 08-5474-cr, 2010 WL 1803834, at *5 (2d Cir. May 6, 2010) (finding that a two-point enhancement, in accordance with Section 4A1.1(d), would be improper if the previous "sentencing judge fail[ed] to impose the statutorily-mandated period of

PRS," and holding that if neither the court's sentencing minutes nor its commitment order articulated a period of PRS, "the defendant [could not] be subjected to that term of supervision"); *Earley v. Murray*, 451 F.3d 71, 75 (2d Cir. 2006).

In this case, the Court's calculation of Petitioner's advisory guidelines range was completed in reliance on incorrect information regarding his criminal history. To the extent that the Court relied on the information in sentencing Petitioner, it did so in violation of Petitioner's Constitutional due process rights. This issue can be reached under Section 2255.

However, Petitioner is procedurally barred from raising this due process claim. Relief under Section 2255 "is an extraordinary remedy," not a substitute for direct appeal. *Mallard v. United States*, Nos. 98 CV 7507, 95 CR 379, 2009 WL 1873665, at *2 (E.D.N.Y. June 29, 2009) (quoting *Bousley v. United States*, 523 U.S. 614, 621 (1998)). As a result, claims made under Section 2255 that were not raised on direct appeal are procedurally barred. *See Bousley*, 523 U.S. at 621-22; *see also Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007) ("In general, a claim may not be presented in a habeas petition where the petitioner failed to properly raise the claim on direct review."). Courts have not interposed a procedural bar, however, in instances in which an "intervening change in the law" prevented a petitioner from raising a claim on direct appeal. *See Johnson v. Holder,* 564 F.3d 95, 99-100 (2d Cir. 2009); *see also United States v. Quintieri*, 306 F.3d 1217, 1230 (2d Cir. 2002).

Petitioner could have raised this issue on direct appeal. The standard to determine if Petitioner could have raised this claim on direct appeal is whether "a duly diligent person in petitioner's circumstance would have discovered" the factual predicates underlying his claim. *Wims v. United States*, 225 F.3d 186, 190 (2d. Cir. 2000) (internal quotations omitted). In this case, because Petitioner was present at his sentencing for attempted murder, he should have

known whether or not he was placed on PRS by Justice Griffin. Furthermore, although *Sparber* was decided two years after Petitioner filed his appeal, the fact that petitioner was not on parole at the time of the instant offense should have been apparent to Petitioner or Petitioner's counsel following the Second Circuit's June 9, 2009, decision in *Earley*. In *Earley*, the Second Circuit clearly held that if neither the court's sentencing minutes nor its commitment order articulated a period of PRS, "the defendant [could not] be subjected to that term of supervision." *Id.* at 75. In light of *Earley*, there was nothing to prevent Petitioner from raising this issue in his appellate brief, which was received by the Second Circuit on July 25, 2006. Therefore, Petitioner's claim that his sentence was miscalculated under the U.S.S.G. is procedurally barred as he failed to raise this issue on direct appeal.

"The procedural default bar may be overcome only where the petitioner establishes either (1) 'cause' for the failure to bring a direct appeal and 'actual prejudice' from the alleged violations; or (2) 'actual innocence.'" *Zhang*, 506 F.3d at 166 (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)). In this case, Petitioner does not argue cause and prejudice, but instead relies exclusively on actual innocence. Accordingly, the following discussion focuses exclusively on the actual innocence exception.

"In the context of a noncapital case, the concept of 'actual innocence' is easy to grasp." *Sawyer v. Whitley*, 505 U.S. 333, 341 (1992). "[I]t normally means simply that the defendant did not commit the crime." *Poindexter v. Nash*, 333 F.3d 372, 380 (2d Cir. 2003) (citing *id.*; *Embrey v. Hershberger*, 131 F.3d 739, 740-41 (8th Cir.1997) (en banc), *cert. denied*, 525 U.S. 828 (1998); and *United States v. Richards*, 5 F.3d 1369, 1371 (10th Cir.1993)). "Actual innocence" can also apply to the sentencing phase of noncapital cases in circumstances in which a defendant has shown, "by clear and convincing evidence, . . . that he is actually innocent of the act on

8

which his harsher sentence was based." *Spence v. Superintendent, Great Meadow Correctional Fac.*, 219 F.3d 162, 172 (2d Cir. 2000). However, "the concept of 'actual[ ] ... innocence" is "distinct from [the concept of] 'legal [ ]' innocence." *Smith v. Murray*, 477 U.S. 527, 537 (1986). Accordingly, the actual innocence does not apply to cases in which the defendant seeks to raise a technical or legal challenge to a prior conviction.

This distinction between actual innocence and legal innocence can be elucidated by contrasting two recent Second Circuit cases: *Spence* and *Poindexter*. In *Spence*, a state court initially deferred sentencing a defendant upon his plea of guilty to multiple counts of armed robbery, promising that if the defendant successfully completed a one-year period of supervised release he would be placed on probation and would probably receive youthful offender treatment. Within several weeks of being placed on supervised release, the defendant was re-arrested and charged with another robbery. Although the defendant sought to adjourn sentencing on the original counts of armed robbery, telling the court that he had several alibi witnesses, the Court denied the defendant's application for an adjournment and immediately imposed a heavy sentence.

After being acquitted on the second robbery, the defendant petitioned in federal court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Since the defendant had not exhausted the ground set forth in his habeas petition by raising it on direct appeal, his petition was procedurally barred. However, the Second Circuit found that application of the "actual innocence" exception was necessary under the circumstances of *Spence* to prevent a "quintessential miscarriage of justice." The Second Circuit stated:

> Where a petitioner shows by clear and convincing proof that he is actually innocent of the conduct on which his sentence is based, the incarceration is fundamentally unjust and the miscarriage of justice exception to the procedural default bar applies.

9

*Id.* at 172.

In *Poindexter*, in contrast, the defendant advanced a legal argument in asserting that he should not have been sentenced as a career offender. Poindexter did not argue that he was actually innocent of the three prior offenses on which his career offender status was based. Rather, he argued that because he was sentenced on these crimes on the same date, the three convictions "should have been treated as a single conviction, and he thus should be deemed not to have the requisite number of prior convictions . . . for career offender status." *Poindexter*, 333 F.3d at 382. The Second Circuit contrasted this legal argument with the factual argument raised in *Spence*, then concluded:

> [W]hatever the merit of the contention that the Guidelines were misapplied in the treatment of Poindexter's three undisputed prior convictions, his claim that the three crimes should have been treated as one crime is not cognizable as a claim of actual innocence.

*Id.*

In this case, as in *Poindexter*, petitioner is raising a legal, rather than a factual, argument. Petitioner is not arguing that he is actually innocent of the attempted murder charge, or that he was not being supervised by the New York State Division of Parole at the time he committed the instant offense. Rather, he is advancing a legal argument, noting that because Justice Griffin failed to mention the statutorily mandated period of PRS at the time of sentencing, he was not technically on parole at the time he committed the instant offense. This technical legal argument cannot serve as a basis for finding "actual innocence." *See Poindexter*, 333 F.3d at 382.

## CONCLUSION

For the reasons set forth above, the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 is dismissed as procedurally barred. Petitioner has not "made a substantial

showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), so a certificate of appealability will not issue. *See Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir.2000). This Court certifies for purposes of 28 U.S.C. § 1915(a)(3) that any appeal from this Order will not be taken in good faith.

**SO ORDERED.**

/SANDRA L. TOWNES
United States District Judge

Dated: July 8, 2010
Brooklyn, New York